William Favreau, Esq. Informal Opinion Town Attorney No. 2002-14 Town of Plattsburgh O'Connell and Aronowitz, P.C. 206 West Bay Plaza Plattsburgh, New York 12901
Dear Mr. Favreau:
You inquire whether the Cadyville Fire District, created in 1952 by the Town of Plattsburgh, has responsibility for providing fire protection to territory annexed to the Town of Plattsburgh and previously included within the Town of Saranac. It is our opinion, on the basis of the representations you have made and documents that you have provided, that the Cadyville Fire District has responsibility for providing fire protection to the territory in question.
Background
According to your representations, the documents that you have supplied, and the judicial decisions you reference, the relevant background facts are as follows.
1. Relevant territorial boundaries
Chapter 129 of the Laws of 1824 created the Town of Saranac out of territory previously included in the Town of Plattsburgh and defined the territory constituting the Town of Saranac as "all that part of the Town of Plattsburgh, lying west of a line two miles west of Platt's six thousand six hundred acre location." The Towns of Plattsburgh and Saranac, therefore, share a common boundary: the western boundary of the Town of Plattsburgh corresponds to the eastern boundary of the Town of Saranac.
In the 1980's, the Town of Saranac and the Town of Plattsburgh disputed their common boundary. The dispute centered around approximately sixty (60) parcels of land (the "disputed territory"). The Town of Plattsburgh was of the view that the disputed territory fell on the Plattsburgh side of the boundary between the two towns; the Town of Saranac disagreed. The Town of Saranac commenced an action in the Supreme Court, County of Clinton, seeking a determination that the disputed territory lay in the Town of Saranac. The towns agreed on the operative language defining their common boundary, but disagreed on where that boundary was physically located on the ground. In a decision dated February 26, 1996, the Supreme Court held in favor of the Town of Saranac.
In 1998, property owners and electors in the disputed territory sought annexation of the disputed territory by the Town of Plattsburgh. The Town Board of Plattsburgh voted to approve the annexation and the Town Board of Saranac voted to disapprove the annexation. The Town of Plattsburgh commenced legal proceedings, seeking a determination that annexation of the disputed territory to the Town of Plattsburgh was in the overall public interest. See Town of Plattsburgh v. Town ofSaranac, 274 A.D.2d 852 (3d Dep't), lv. denied, 95 N.Y.2d 768 (2000); seealso General Municipal Law § 712. In a decision dated July 27, 2000, the Appellate Division held that the annexation was in the overall public interest and, subsequently, the annexation was approved pursuant to the procedures of General Municipal Law § 713.
2. Fire Districts
The history of the fire districts is as follows. In 1952, the Town Boards of the Towns of Plattsburgh and Schuyler Falls passed a resolution creating the Cadyville Fire District to serve property in those towns. In the resolution creating the Cadyville Fire District, the western boundary of the district is defined, in relevant part, as running "along the westerly line of the Town of Plattsburgh." Thus, where the territories of the Towns of Plattsburgh and Saranac meet, the Cadyville Fire District boundary is defined as being identical to, or coterminous with, the western boundary of the Town of Plattsburgh. In 1955, the Town of Saranac created the Town of Saranac Fire District. According to the documents you have provided to us, the eastern boundary of the district is defined as running "along the east line of the Town of Saranac."
You represent that, throughout the period preceding the Supreme Court's 1996 decision, to the extent fire protection services have been required in the disputed territory, the Cadyville Fire District provided those services.
Analysis
Your inquiry has two parts: (1) Did the Supreme Court's February 26, 1996 decision, which included the disputed territory in the Town of Saranac, have any effect on the boundaries of the Cadyville Fire District and Town of Saranac Fire District; and (2) If, as a result of that decision, the disputed territory became a part of the Town of Saranac Fire District, did the annexation result in a return of the disputed territory to the Cadyville Fire District? Our view is that neither the Supreme Court's February 26, 1996 decision nor the subsequent annexation of the disputed territory by the Town of Plattsburgh altered the boundaries of the Cadyville Fire District.
The effect of the annexation is clear under state law. General Municipal Law § 716(13) provides that: "If a town annexes territory of another town, such annexation shall not affect the boundaries of any fire district, fire protection district, or fire alarm district." Seealso Op. Atty. Gen. (Inf.) No. 89-19 (under General Municipal Law §716 boundaries of fire district remain the same after village annexes portion of fire district territory located within town).
The effect of the Supreme Court's 1996 decision is not as clear. No statutory provision directly addresses the effect on fire district boundaries of a legal decision, such as the Supreme Court's 1996 decision, that defines town boundaries in accordance with a new survey. However, we are of the opinion that, as with an annexation, such a judicial decision generally will not modify the boundaries of fire districts. General Municipal Law § 716(13) appears to provide the closest analogy to this circumstance, because it addresses the effect of redefinition of the common boundary between towns.[1] This provision expresses a policy judgment that, generally, settled expectations concerning fire protection services should not be disturbed by changes in town boundaries, and in the absence of any other indication from the Legislature, we find it appropriate to look to this judgment.
To the extent laws governing fire districts have any relevance, they also support this conclusion.
Fire district boundaries need not be defined, in the first instance, so that they follow town boundaries. Fire districts, as well as fire protection districts and fire alarm districts, are established by town boards pursuant to resolution or determination. Town Law §§ 170,173. When they are created, fire districts need not be made to include the same territory that a town includes: a fire district could be made to include all, some, or none of the territory of a town and, although a fire district and a town may share common boundaries, either in whole or in part, nothing in the law requires that the boundaries of a fire district and town be identical. Indeed, there is no requirement that a fire district include only territory within a single town: fire districts may include territory in more than one town, as here. See id. § 170(1).[2]
Furthermore, General Municipal Law § 716(13) demonstrates that a fire district's boundaries, if they follow a town's boundaries at the fire district's inception, do not necessarily continue to do so whenever the town's boundaries change. We note that a fire district is, in its own right, a political subdivision of the State, see Town Law § 174(7), and, thus, independent of the town or towns that created it. See Miller v. Savage, 237 A.D.2d 695, 696 (3d Dep't 1997); Fallicav. Town of Brookhaven, 69 A.D.2d 579, 585 n. 1 (2d Dep't 1979).[3]
Finally, the specific language defining the boundaries here does not mandate a different result. In 1952, when the Town of Plattsburgh created the Cadyville Fire District, the fire district's western boundary was defined as running "along the westerly line of the Town of Plattsburgh." We read this language to include territory that the town boards believed lay to the east of the Plattsburgh town boundary in 1952. It is our understanding, based upon your representations and the judicial decisions you reference, that until the 1980s, the disputed territory was believed to fall on the Plattsburgh side of that boundary. Indeed, the Appellate Division found that annexation of the disputed territory by the Town of Plattsburgh was in the overall public interest in part because of the "historical unity" of the Town of Plattsburgh and this territory. See 274 A.D.2d at 853. In this regard, we also note that you represent that the Cadyville Fire District in fact provided fire protection services to the disputed territory at least until 1996.
In conclusion, in our view, neither the 1996 decision of the Supreme Court, Clinton County, nor the subsequent annexation had any effect on the fire district boundaries. With respect to fire district boundaries, the status quo was preserved. According to your representations, the Cadyville Fire District boundary included the disputed territory before 1996. Therefore, the Cadyville Fire District continues to have responsibility for providing fire protection to the territory in question.
The Attorney General renders formal opinions only to officers and departments of the State government. This perforce is an informal and unofficial expression of the views of this office.
Very truly yours,
LAURA ETLINGER, Assistant Solicitor General
In Charge of Opinions
By:_____________________________
DANIEL CHEPATIS
Assistant Solicitor General
[1] We note that the effect of annexation by a village on fire district boundaries is similar under state law to the effect of annexation by a town; there is no change in fire district boundaries when a village annexes territory of another village or of a town unless action is taken by the affected residents and their town board to change the boundaries.See General Municipal Law § 716(12); Town Law §182(1). In contrast, when a city annexes territory of a town, the annexed territory ceases to be part of any preexisting fire district and fire protection in the annexed territory becomes the responsibility of the city. See General Municipal Law §§ 709,716(11).
[2] If a proposed fire district includes territory in more than one town, the establishment of the fire district must be approved by the town boards of any town in which the proposed district is situated. Town Law § 170(1).
[3] While the consequences of annexation by cities for boundaries of fire districts is different, see General Municipal Law § 716
(11), that is not dispositive here in light of the clear evidence that fire district boundaries do not automatically change following changes in town boundaries.